No. 25-1235

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 1, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| CHURCHILL DOWNS TECHNOLOGY INITIATIVES COMPANY, dba TwinSpires, ) ) ) ) Plaintiff-Appellee, ) ) ) v. ) ) MICHIGAN GAMING CONTROL BOARD, ) ) Defendant, ) ) and ) ) HENRY L. WILLIAMS, JR., in his official ) capacity as Executive Director of the Michigan ) Gaming Control Board, et al., ) ) Defendants-Appellants. ) | O R D E R |

Before: STRANCH, READLER, and MATHIS, Circuit Judges.

Defendants Henry L. Williams, Jr., in his official capacity as Executive Director of the Michigan Gaming Control Board, and Dana Nessel, in her official capacity as Attorney General of the State of Michigan, appeal the district court's preliminary injunction in favor of Plaintiff Churchill Downs Technology Initiatives Company, dba TwinSpires, in this suit alleging that Michigan is attempting to unconstitutionally regulate TwinSpires in violation of the Interstate Horseracing Act of 1978 ("IHA"). Defendants move to stay the injunction pending appeal.

We consider four factors when deciding whether to grant a motion for a stay pending appeal: (1) the likelihood that the movant will succeed on the merits of the appeal; (2) the likelihood that the movant will suffer irreparable harm absent a stay; (3) whether a stay will cause substantial harm to others; and (4) whether a stay serves the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991) (citation omitted). Still, the first two factors "are the most critical." *Nken*, 556 U.S. at 434. The movant must show more than a "possibility of irreparable injury," *id.* (quoting *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)), and even if a movant can demonstrate irreparable harm, "he is still required to show, at a minimum, 'serious questions going to the merits,'" *Griepentrog*, 945 F.2d at 154 (quoting *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

When assessing the movant's likelihood of success on appeal, we review the district court's legal conclusions de novo but review "the district court's ultimate determination as to whether the four preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief" for an abuse of discretion. *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020) (quoting *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (en banc) (order) (per curiam)). "[A] 'district court abuses its discretion when it relies on clearly erroneous findings of fact, uses an erroneous legal standard, or improperly applies the law.'" *United States v. Flowers*, 963 F.3d 492, 497 (6th Cir. 2020) (quoting *United States v. White*, 492 F.3d 380, 408 (6th Cir. 2007)).

TwinSpires is licensed by the Oregon Racing Commission to accept off-track parimutuel wagers—individuals from all over the country place bets on the outcome of a horserace, the bets

are all pooled, TwinSpires collects a "takeout," and whatever is left is distributed to the winners. The interstate nature of parimutuel gambling makes governance complex. For example, a California resident could place a wager in Michigan using an Oregon-based app to bet on a horserace in Kentucky, leaving all four states jockeying for the right to regulate that wager. So Congress passed the IHA. The act's stated goals are to "prevent interference by one State with the gambling policies of another" while leaving to the states "the primary responsibility for determining what forms of gambling may legally take place within their borders." 15 U.S.C. § 3001(a).

The Michigan Horse Racing Law ("MHRL") requires entities like TwinSpires to hold a "third-party facilitator license" before accepting horseracing bets placed in Michigan. *See* Mich. Comp. Laws § 431.308(1)(d). TwinSpires asserts that because the IHA does not require the consent of the state where the wager is placed, the MHRL is preempted and Michigan's attempts to regulate TwinSpires's activities under the MHRL are unlawful. The district court agreed and entered a preliminary injunction preventing Michigan "from enforcing the MHRL licensing requirement—or issuing sanctions under the MHRL—against TwinSpires for accepting wagers from individuals in Michigan on races that take place outside Michigan." **[R. 19, PageID 474].** On appeal, Defendants argue that the district court misconstrued the IHA's text in ruling on preemption, and that TwinSpires' alleged irreparable harm was too speculative to support an injunction. Based on our preliminary review of the arguments, we do not believe Defendants have shown a likelihood of success on the merits.

When "Congress enacts a law that imposes restrictions or confers rights on private actors," and "a state law confers rights or imposes restrictions that conflict with the federal law," "the federal law takes precedence and the state law is preempted." *Murphy v. Nat'l Collegiate Athletic*

*Ass'n*, 584 U.S. 453, 477 (2018). As its name suggests, "conflict preemption" arises where a state law imposes a duty that is "inconsistent—*i.e.*, in conflict—with federal law." *Id.* at 478. In those situations, the state law "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress," and it "skew[s]" the balance struck by Congress between federal and state interests. *In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig.*, 65 F.4th 851, 860–61 (6th Cir. 2023) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)); *see also id.* at 867.

Under the IHA, "off-track betting system[s]" like TwinSpires must obtain the consent of "the host racing association" (i.e., the organization that conducts the race), "the host racing commission" (i.e., the regulatory body that governs the location where the race is being held), and "the off-track racing commission." 15 U.S.C. § 3004(a); *see also id.* § 3002(7), (9)–(11). The act defines "off-track racing commission" to mean the person or body "with jurisdiction to regulate off-track betting *in that State*." *Id.* § 3002(11) (emphasis added). The district court concluded and TwinSpires maintains that "that State" means the "off-track State," where the wager "is accepted"—in this case, Oregon—meaning that attempts to regulate by the state where the wager is placed (if distinct from the state where the wager is accepted) would be pre-empted. *Id.* § 3002(6). Defendants argue that it means the state where the wager is placed—here, Michigan.

The statutory text supports the district court's interpretation. The IHA consistently defines "off-track" conduct in relation to the location of the wager's acceptance. *See id.* § 3002(6) ("'off-track State' means the State in which an interstate off-track wager is *accepted*" (emphasis added)); *id.* § 3002(7) ("'off-track betting system' means any group which is in the business of *accepting wagers* on horseraces at locations other than the place where the horserace is run" (emphasis added)); *id.* § 3002(8) ("'off-track betting office' means any location within an off-track State at

which off-track wagers are *accepted*" (emphasis added)). Indeed, "[n]o person may accept an interstate off-track wager except as provided" in the IHA. *Id.* § 3003 (emphasis added).

Defendants' alternative interpretation would allow Michigan to regulate wagers on races already committed to the regulation of other states, which flatly contradicts the IHA's express intent to "prevent interference by one State with the gambling policies of another," and to "ensure States will continue to cooperate with one another in the acceptance of legal interstate wagers." *Id.* § 3001(a)(2)–(3). It would also lead to the illogical result that the body "with jurisdiction to regulate off-track betting," *see id.* § 3002(11), is not the body with jurisdiction to regulate the "off-track betting system," *see id.* § 3002(7), or its "off-track betting office[s]," *see id.* § 3002(8). We therefore find it unlikely that this argument will succeed on appeal.

To the extent the MHRL scheme obligates TwinSpires to obtain consent not required by the IHA, it conflicts with the federal statute and skews the careful balance struck by Congress when it passed the federal statute. *In re Ford Motor Co.*, 65 F.4th at 867. When a state law runs up against federal law, federal law comes first. *Murphy*, 584 U.S. at 477. We think Defendants are unlikely to succeed in arguing otherwise in this case.

Defendants present one further argument in favor of reading the IHA to allow the MHRL. Defendants assert that, even if we accept the district court's interpretation of § 3002(11), there is no conflict because the IHA applies only to "legal wager[s]," and covers interstate parimutuel wagering only "where *lawful* in each State involved." 15 U.S.C. § 3002(3) (emphasis added). Defendants argue that Michigan is, at the very least, an involved state and that wagers placed in Michigan are not "legal" and "lawful" unless placed with licensed third-party facilitators.

Once again, this interpretation is inconsistent with the act's text.

"[L]egal," in the context of § 3002(3), demands only compliance with federal laws regulating areas beyond the IHA's domain.  For example, if an underage bettor placed an interstate wager over the Internet, *see* 31 U.S.C. § 5362(10)(A), that wager would not be "legal" under the act.  State laws, such as the MHRL, do not fit this description.  Holding otherwise would render surplusage § 3002(3)'s reference to "parimutuel wagers, where lawful in each State involved," as those same wagers must be "legal."  15 U.S.C. § 3002(3); *see, e.g.*, *Kungys v. United States*, 485 U.S. 759, 778 (1988) (plurality opinion) (describing "cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant").  Likewise, our reading reserves room for § 3003 to wield an independent bite.  **[Appellant Br. 9–10 (pointing out surplusage in district court's reading).]**  *See* 15 U.S.C. § 3003 ("No person may accept an interstate off-track wager except as provided in this chapter.").

Further, defendants' interpretation that the IHA applies only when the wagers placed are already entirely lawful under the laws of the state in which they are placed would limit the IHA's scope to states where it complies with state regulations.  As we have already recognized, such limitations are inconsistent with the act's stated goals.

The district court resolved the matter at a higher level of generality, finding that because Michigan law permits parimutuel wagers in certain circumstances, *see* Mich. Comp. Laws § 431.317(1), parimutuel wagers are not unlawful in the state.  This interpretation protects the act's interstate/intrastate balance by letting states determine whether to allow their residents to place parimutuel wagers but prohibiting states that so allow from interfering when those wagers are accepted out of state.  We therefore think Defendants are unlikely to show that the district court got it wrong.

Defendants' last argument is that TwinSpires failed to sufficiently allege irreparable harm. Prohibiting TwinSpires from operating in Michigan creates "a realistic prospect of lost sales and market share," which "would harm [its] goodwill and competitive position in ways that would be hard to compensate." *Collins Inkjet Corp. v. Eastman Kodak Co.*, 781 F.3d 264, 279 (6th Cir. 2015). We do not believe Defendants are likely to show that the district court abused its discretion when it found that this was sufficient to justify the injunction. We do not find, therefore, that Defendants are likely to succeed on the merits.

Turning to the irreparable harm Defendants assert to justify a stay pending appeal, they argue (among other things) that Michigan has been deprived of its sovereign right to regulate sports gambling within its borders. We have recognized that "invasions of state sovereignty" often constitute irreparable harm because they "likely cannot be economically quantified, and thus cannot be monetarily redressed." *Kentucky v. U.S. EPA*, No. 23-3216/3225, 2023 WL 11871967, at *4 (6th Cir. July 25, 2023) (order) (quoting *Kentucky v. Biden*, 23 F.4th 585, 612 n.19 (6th Cir. 2022)). But even if Michigan's loss of sovereignty is an irreparable harm, Defendants are "still required to show, at a minimum, 'serious questions going to the merits.'" *Griepentrog*, 945 F.2d at 154 (quoting *DeLorean Motor Co.*, 755 F.2d at 1229). They have not done so at this juncture.

Meanwhile, as explained above, a stay threatens TwinSpires' goodwill and competitive position. Further, the public is served by enforcing Congress's efforts to exercise its exclusive authority where permitted. In passing the IHA, Congress found that there is a public interest in both "ensur[ing] States will continue to cooperate with one another in the acceptance of legal interstate wagers," and "prevent[ing] interference by one State with the gambling policies of another." 15 U.S.C. § 3001(a). The final two factors therefore weigh against a stay.

Accordingly, the motion for a stay pending appeal is **DENIED**.

                                                ENTERED BY ORDER OF THE COURT

                                                Kelly L. Stephens, Clerk